## ARBUCKLE v. (AMERICAN) LUMBER-MENS MUT. CASUALTY CO. OF ILLINOIS.

### No. 286.

Circuit Court of Appeals, Second Circuit.

July 17, 1942.

O'Neill, Higgins & Latto, of New York City (John V. Higgins and Arthur J. Mundy, both of New York City, of counsel), for plaintiff-appellee.

Evans & Rees, of New York City (Walter G. Evans .and William G. Walsh, both of New York City, of counsel), for defendant-appellant.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Jurisdiction is based upon grounds of diversity in this action brought under § 167 of the New York Insurance Law, Consol. Laws, c. 28, to enforce an automobile liability policy for the benefit of a judgment creditor of the policy holder. The defendant has appealed from a judgment for the plaintiff entered on a jury's verdict after a motion to set aside the verdict had been denied.

Defendant's policy No. 6998312 was issued to one Newman on April 15, 1938, insuring him for one year against liability for damages for bodily injury which he should be obligated to pay because of the ownership of his automobile, a 1937 Chevrolet coupe. This coverage was limited to $10,000 per person injured and a total of $20,000 in one accident, and the premium for the year was $28.75 which was paid. During the currency of the policy on March 16, 1939, the plaintiff, while a passenger in a taxicab of the Apex Cab Corporation, was injured in a collision between the taxi and Newman's automobile at the intersection of Ninth Avenue and 21st Street in the Borough of Manhattan, New York City. In an action for personal injury against Newman in the New York Supreme Court for New York County, the plaintiff recovered judgment for $12,500 and costs. After the accident Newman had promptly notified the defendant which, however, disclaimed liability and refused to assume his defense in the New York action. He therefore unsuccessfully defended the suit with the above result. The present suit is brought by the plaintiff in that action, in which the judgment remains unsatisfied, to recover on the policy to the extent of its coverage in accordance with the New York statute.

The defense of the insurance company as set forth in its answer as amended is that Newman failed to perform the terms and conditions of the policy, or more specifically that he breached the warranty that the insured automobile "would be principally used at R. F. D. #2, Callicoon, New York and vicinity and garaged at R. F. D. #2, Callicoon, New York and vicinity, which declaration, representation and warranty were, so far as the defendant was concerned, essential to the risk." The policy itself contains the declaration in these words, "The automobile will be principally used at R. F. D. #2, Callicoon, N. Y. and ,Vic. and garaged at Same."

At the trial it appeared that Newman had two residences during the time this policy, was in force, one in Callicoon and one in New York City. The Callicoon residence was in his father's home where he had his own room and kept most of his clothes. This was also his residence for voting purposes and to it he came on week-ends and vacations, always bringing his car unless he had left it there on his previous visit. He also testified that 14,000 or 15,000 of the 16,000 miles he drove that year were driven in and about Callicoon. His New York City residence consisted of a room where he lived during the week while he worked in the city for the Dairymen's League. Much of the time when he was in New York he had his car there too, and a statement signed by him after the accident at the offices of the insurance company was introduced to show that he had said then that the car was used about 50% in New York and 50% in Callicoon.

The testimony as to where the car was garaged during the period in question was conflicting. From Newman's testimony of the number of days it was left in Callicoon the jury might have found that it was there 282 days of the year. On the other hand, the evidence of the garage men of the West End Service Co. where Newman kept his automobile when in New York, tended to show that the car was kept in that garage 222 days during the year. What was the fact was obviously a question for the jury.

The trial judge allowed the jury to determine whether there was compliance with the policy condition that the automobile be used and kept principally in Callicoon and vicinity. In his charge he instructed the jury as to the two questions for their consideration—the meaning of "principally used at R. F. D. #2, Callicoon, N. Y. & Vic. and garaged at Same," and the disputed fact of how much of the time the car was kept and used in Callicoon. It ap-

peared that Newman had the previous year been insured under a similar policy issued by the defendant and that before the policy in suit was issued to him he had had a conversation with the insurance company's agent in Callicoon in which he told the agent that he intended to use the car as he afterwards did in connection with his work in New York City. The former policy had contained the representation that the automobile would be principally used and garaged at Callicoon, N. Y. After this conversation, the agent did not put exactly the same representation into the new policy but changed it to read as above set forth.

It is objected that this evidence was erroneously admitted because the terms of a written contract were varied by the use of antecedent parol statements. That, however, is not a valid ground for the exclusion of such evidence when the writing is ambiguous. This clause in the policy clearly was uncertain in meaning and it was proper to show the setting in which the language of the condition was used in order to be able to assign to it the meaning intended by the parties. Thomas v. Scutt, 127 N.Y. 133, 27 N.E. 961; Becker v. Peter A. Frasse & Co., 255 N.Y. 10, 173 N.E. 905; Loonsk Bros., Inc., v. Sinclair Motor Corp., 254 App.Div. 137, 139, 4 N.Y.S.2d 416. That the agent had authority to insert in the policy Newman's representations as to where the automobile would be principally used and kept cannot be successfully questioned. It was, therefore, not error for the judge to submit to the jury on such evidence the question of the meaning of the language used when the policy was prepared and issued. Utica City National Bank v. Gunn, 222 N.Y. 204, 208, 118 N.E. 607; Kenyon et al. v. Knights Templar & Masonic M. A. Ass'n, 122 N.Y. 247, 254, 25 N.E. 299; Rankin v. Fidelity Ins. Trust & S.-D. Co., 189 U.S. 242, 253, 23 S.Ct. 553, 77 L.Ed. 792.

The trial judge did that clearly in words which are typified by the following: "It is for you to say what it means. Did vicinity mean Callicoon and a limited area outside of it, or did it mean Callicoon and the use in coming to New York? It is a term which is relative. Vicinity has not been shown at this trial to mean any particular territory and it is for you to say whether or not the use of the word vicinity was sufficient to include a use particularly, if you please, 125 miles away, which was

about, I think, the distance, 125 or 135 miles that Newman said it was from Callicoon to New York." The court further charged the jury that: "Once the meaning of the words under the circumstances has been established, then, of course, there could be no waiver of the terms by any agent" and properly left it to determine the meaning of the word "principally" as used in the contract of insurance. Zurich General Accident & Liability Ins. Co. v. Thompson, 9 Cir., 49 F.2d 860. Thus the jury was correctly permitted, not to find any waiver of the policy terms, but to find what the ambiguous terms used in the policy actually meant. And especially in view of the principle that, as the terms of an insurance policy are what the company makes them, any ambiguity is to be resolved liberally in favor of the insured, Mutual Life Ins. Co. of New York v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Greenbaum v. Columbian Nat. Life Ins. Co., 2 Cir., 62 F.2d 56; Gerka v. Fidelity & Casualty Co., 251 N.Y. 51, 167 N.E. 169, the jury was justified in finding from the evidence that the language of the policy covered the automobile used and garaged as Newman's car was shown to have been used and kept during the policy period.

Although the plaintiff had the burden of proving the policy and that it covered Newman's automobile the judge correctly charged that the burden of proving a breach of the condition that the car would be kept and used principally in Callicoon or vicinity was upon the defendant. This condition was not like those in Williams v. Fire Association of Philadelphia, 119 App.Div. 573, 104 N.Y.S. 100; and L. Black Co. v. London Guarantee & Accident Co., Ltd., 190 App.Div. 218, 180 N.Y.S. 74, affirmed 232 N.Y. 535, 134 N.E. 561, where compliance with the requirements to notify the company and to bring action within a certain time after the policy became due was made a specific condition of recovery. Nor does this case fall within the rule as to burden of proof of Lavine v. Indemnity Ins. Co. of North America, 260 N.Y. 399, 183 N.E. 897. There the question was not who had the burden of proving breach of warranty or even breach of conditions, but it was rather who had the burden of proving that the automobile in question was owned by the insured and hence covered by the policy. Where, as here, the defense alleged is breach of warranty or the falsity of a material representation, the burden of

proving that issue rests upon the defendant unless the parties have agreed to the contrary by making compliance with the warranties conditions precedent to the bringing of suit. Murray v. New York Life Insurance Co., 85 N.Y. 236, Keck v. Metropolitan Life Ins. Co., 238 App.Div. 538, 264 N.Y.S. 892.

 No doubt if proved, misrepresentations as to the place of using and garaging the automobile would be sufficiently material to defeat recovery upon the policy, for the premiums are fixed with regard to this factor which is considered an important element in ascertaining the risk assumed by the company. See Marone v. Hartford Fire Insurance Co., 114 N.J.L. 295, 176 A. 320; Lummus v. Fireman's Fund Insurance Co., 167 N.C. 654, 83 S.E. 688, L.R.A.1915D, 239. But without such proof, the insurer is bound by its policy terms though a larger premium than that it elected to receive might have been earned.

Affirmed.